Breard vs. Blanks.

No. 13,184.

D. A. BREARD, JR., VS. ROBERT B. BLANKS.

SYLLABUS.

1.  In the trial of suits for settlement of partnerships, the accounts referred to by witnesses while giving their testimony should be offered in evidence and filed in the record, in order that the Appellate Court as well as the court of first instance may know what the accounts as a whole actually show (47 Ann., 204).

2.  Where it is apparent that contracting parties have not understood each other, their rights in the subject matter of the contract will be determined from their acts and deeds with reference thereto and not from their contradictory assertions of the agreement given at the trial of a suit instituted for a settlement of their interests growing out of the contract.

3.  The joint purchase of property by several does not of itself constitute a partnership. (C. C. 2806; 4 Ann., 216.)

ON APPEAL from the Fifth Judicial District Court for the Parish of Ouachita. Potts, J.

Stubbs & Russell for the Plaintiff and Appellee.

Hudson, Potts & Bernstein for the Defendant and Appellant.

Argued and submitted May 30, 1899.
Opinion handed down June 22, 1899.

---

The opinion of the court was delivered by

NICHOLLS, C. J.   This is a suit for the settlement of a partnership between the plaintiff and defendant, involving the ascertainment of the interest of each partner in the profits made in operating a saw and planing mill; the share of each in the proceeds of the sale of a lot of lumber acquired by the partners when they purchased the mills, an account of which was kept separately from the sales of lumber manufactured by the firm, and the distribution of the money realized by a sale of the plant at the termination of the partnership.

The plaintiff alleges that on the 2nd day of October, 1897, the defendant. at sheriff's sale, acquired of the property formerly composing the sawmill site of the Sheets Lumber Co., Limited, in Ouachita parish, five acres of land, with the residence, buildings and improvements thereon, for the price of three thousand and fifty dollars, also fifty-eight acres of land, for the price of one thousand, four hundred and twenty-five dollars.

That on or about the 4th of December, 1897, he. acquired in conjunction and in indivision with the defendant, at sheriff's sale, of the property of the Sheets Lumber Co., Limited, a certain described tract of land containing fifteen and eight-tenths acres, together with the sawmill and planing plants, tramways, machinery, etc., thereon; and a lot of lumber upon the same, for the price of five thousand five hundred and twenty-five dollars, of which he paid one-half the price.

That he then began to operate and conduct said saw mill in partnership with defendant, under the name and style of the Pargoud Lumber Co., the partnership being composed of himself and defendant as equal partners.

That it was understood at the time of the formation of said partnership, that the property acquired by defendant in October, should be put into and made a part of the assets of the partnership, and defendant continually promised during the existence of the partnership to convey an undivided half of the property to petitioner for the price and sum at which he had acquired said half interest, but he failed to carry out his agreement during the existence of the partnership.

That during the time the partnership was in existence valuable and

permanent improvements were made by the firm to the property be-
longing to petitioner and Blanks, the defendant, by the purchase of
machinery, which cost two thousand and seven hundred and ninety-
eight dollars.

That said saw and planing mills belonging to the parties were
operated and the business in connection therewith was conducted
for joint benefit of petitioner and his partner, until the 19th of May,
1898, when it was dissolved by a sale of all the partnership property.

That the firm business was prosperous; that the lumber which he
and defendant bought with the mills was sold for their joint account
and brought the sum of eight hundred and three dollars and ninety-
eight cents; and that the lumber manufactured by the firm sold for
at least twelve thousand dollars; that after deducting all expenses of
operation, petitioner's share of the net profits amounts to at least
three thousand dollars, if not more, which, in addition to one-half of
the eight hundred and three 98-100 dollars, he is entitled to recover.

That about the 19th day of May, 1898, petitioner made a deed to
defendant of his undivided half interest in the property belonging to
them as aforesaid, to enable defendant to consummate a sale of the
same, which he made, to a third person.

That defendant paid petitioner no part of the price stipulated in
said deed to have been paid, and he gave petitioner a counter letter
in which he acknowledged that fact, and that payment was to be made
in the settlement of the affairs of the Pargoud Lumber Co., and said
price was arbitrary and did not represent the real value of his in-
terest.

That after the execution of said deed, defendant sold all of said
property to the St. Louis Eau Claire Lumber Co., for twenty-five thou-
sand dollars; five thousand dollars of said price being included in the
price stipulated in a deed from the defendant and John P. Parker, to
the same company, of an undivided three-fourths interest in 647 acres
of land for the purpose of concealing from petitioner the fact that
the property belonging to him and defendant had sold for twenty-five
thousand dollars, the lands sold by defendant Blanks, and Parker
having really been sold for $750, instead of $5750, as expressed in that
deed.

That on a settlement of the partnership he is entitled to recover
one-half of said sum of twenty-five thousand dollars, less one-half of
the price paid by defendant for the property purchased by him at

sheriff's sale, in October, 1897, in pursuance of the agreement of de-
fendant to the effect that same should become partnership property,
and in the event the court should hold that said agreement was not
binding on defendant, he was entitled to share in the aforesaid sum
of twenty-five thousand dollars, in the proportion that the price paid
by defendant and himself for the property owned by them, to-wit:
five thousand five hundred and twenty-five dollars ($5,525), added to
the cost of the improvements made thereto, to-wit:  The sum of two
thousand seven hundred and ninety-eight dollars and eighty-one cents
($2,798.81-100), aggregating the sum of eight thousand and three
hundred and twenty-three dollars and eighty one-cents ($8,323.81-100)
bears to the price by him paid to Blanks for the property acquired in-
dividually.

That at the termination of the business the defendant took control
of the assets of the firm, received all monies realized from sales of
lumber and earnings of the business; collected all amounts due the
firm; disposed of all property belonging to it; receiving the price
therefor, and is now in possession of all funds so received.

That he had been unable to obtain a settlement of the partnership
and to obtain payment of the sums due him by defendant, and that
he had received out of the business two thousand seven hundred and
sixty-two dollars, and fifty cents, on account, and in partial settlement
of his interest in the partnership.

That his interest in the partnership is worth at least ten thousand
dollars, exclusive of the said sum so paid to petitioner and that de-
fendant will owe him on a settlement (exclusive of said amount re-
ceived), that amount, if not more.

He prayed for citation; that the partnership be settled and liqui-
dated; that his interest in the assets of the partnership and his share
in the profits and value of all property formerly belonging to the
partnership, and to petitioner, and to defendant, and sold by defend-
ant, and  of all monies collected and received by him for account of
said partnership, be ascertained and that he have judgment against
defendant for ten thousand dollars, or for whatever sum should be
found due him on a settlement of the partnership, with legal interest
from judicial demand.

Defendant first pleaded an exception of no cause of action.  He
then answered, pleading first the general issue.

He averred that on the 18th of May, 1897, when a receiver was ap-

pointed to the Sheets Lumber Co., Limited, it was largely indebted to the Merchants and Farmers' Bank, of which defendant was then and was still president, and to the Ouachita National Bank, of which plaintiff was then and was still president.

That on the 2nd of October, 1897, he purchased at receiver's sale of the said company's property, the property which the plaintiff in his petition alleged he had then bought; that subsequent thereto on or about the 4th of December, 1897, respondent and plaintiff, in order to secure the eventual payment of the debts due the Merchants and Farmers' Bank and the Ouachita National Bank by the Sheets Lumber Co., Limited, or as much thereof as possible, made and entered into an agreement to purchase at receiver's sale, the saw mill and planing mill, plant, tramway, etc., attached thereto, and in the event they should become the purchasers they should operate the same for the joint benefit of said banks until the full payment and discharge of the debts due the same from the proceeds of operation or sale of said plant and if the said proceeds or operation, or sale, should be insufficient to discharge entirely each of the said debts, then the same should be divided between the two banks ratably as the debt due each of them by the Sheets Lumber Co., bears to the aggregate of said proceeds.

That pursuant to said agreement, respondent and plaintiff attended said sale and thereat purchased the said saw mill and planing mill plants, tramways, etc., attached thereto, together with a lot of old odds and ends, and fifteen and eight-tenths acres of land upon which the same were located and constructed, and all the notes, books and accounts, rights and credits of the Sheets Lumber Co., Limited, and thereafter began and continued the operation of said plant under said agreement until a sale of same, about the 20th of May, 1898.

Respondent admitted that the property purchased by him on the 20th of October, 1897, at the receiver's sale, was to be included in the agreement between plaintiff and himself, and its proceeds when sold accounted for along with the proceeds of operation and sale of the saw and planing mill plant proper, the old lumber, notes, books, accounts, rights and credits, purchased on December 4th, 1897, but he denied that the undivided interest in the one hundred and forty-seven acres of land purchased at said sale by respondent and J. P. Parker, entered into said agreement, was contemplated by it, or that

plaintiff had then or ever had had any interest therein of any kind, character or description.

He averred that in the purchase of said property and its operation as set forth in plaintiff's petition, plaintiff and himself were acting merely as the trustees for said Banks, for their benefit and advantage, and all sums paid were paid for and on account of said banks.

That plaintiff had contributed nothing to pay for said purchases, the small sum advanced by him having been returned to him long since at his urgent solicitation and request.

That plaintiff took charge of all the notes and accounts, books and papers, rights and credits purchased by them, as stated, and had rendered no account of the collections therefrom.

That he, respondent, was compelled to superintend the operations of said plant alone, because plaintiff refused to give it any attention whatever.

That during the time said plant was being operated by plaintiff and himself, valuable improvements were put on the property and much machinery was purchased, amounting to several thousand dollars, but he denied that plaintiff contributed anything whatever toward paying therefor, and he averred that the same was paid for by respondent.

Respondent admitted that the operation of the mill was profitable, but he denied that the profits were anything like the sum plaintiff alleged them to be. He averred that he, as well as plaintiff, was desirous and anxious for a settlement of said business, and was more than willing to render a faithful and true account of matters and things entrusted to him and relating to said plant and property on the trial of the cause upon the basis understood and agreed upon, to-wit: Ratably between the Merchants and Farmers' Bank and the Ouachita National Bank as the debt due each of said banks respectively by the Sheets Lumber Co., Limited, bears to the sum to be distributed.

He especially denied any collusion or fraud between himself and J. P. Parker, or any other person, as alleged in plaintiff's petition, or that there were any fictitious values placed upon any of the said property sold to the St. Louis Eau Claire Lumber Co. He prayed that plaintiff's demand against him for a monied demand be rejected; that plaintiff be required to render a just, true and full account of all collections made by him from the notes and accounts, books and papers, rights and credits left in his hands for collection, liquidation

and settlement, and upon a fair settlement of said business affairs for such judgment in the premises as justice and equity may require— and for general relief.

The District Court rendered judgment to the effect that the effects then on hand in the Merchants and Farmers' Bank of Monroe, and under the control of the defendant, R. B. Blanks, after paying Woodworth and Chauvin two hundred and thirty-three dollars and eighty-four cents, and Leonard $250.00, the plaintiff, D. A. Breard, Jr., is to receive five thousand eight hundred and thirteen dollars and sixty-nine cents, and the defendant Blanks is to receive seven thousand one hundred and four dollars and fifty-five cents, this amount including the eight hundred and three dollars and ninety-eight cents due Breard and Blanks by the partnership. And it appearing that the assets of said partnership are under the control of the defendant, there be judgment in favor of plaintiff and against defendant for the said sum of five thousand eight hundred and thirteen dollars and sixty-nine cents, with legal interest from date of judgment and one-half of the costs of suit.

The court further ordered that the amount stated to be due to Woodworth and Chauvin, two hundred and thirty-three dollars and eighty-four cents, and Leonard two hundred and fifty dollars, be paid; by defendant out of the funds of said partnership under his control in the event said debts are not so paid and plaintiff be compelled to contribute to the payment of the same, he recover from said defendant one-half the amount so contributed as paid.

The court further decreed that whatever amounts were still uncollected and due, if any, to the partnership, belong in equal proportions to plaintiff and defendant, and that each of the parties pay half the costs.

Defendant appealed devolutively.

Plaintiff in the Supreme Court answered the appeal praying that the judgment be amended by increasing the amount of the judgment in his favor to the sum of seven thousand one hundred and seventy-one dollars and ninety-four cents, and that as so amended the judgment be affirmed.

### OPINION.

The Sheets Lumber Company, Limited, a corporation domiciled in the parish of Ouachita, engaged in the saw mill business, having gone

into the hands of a receiver, its property was sold in different lots, at different times.

At a sale made in October, 1897, certain property was sold at sheriff's sale to the defendant, Blanks, for the sum of four thousand four hundred and seventy-five dollars    ($4475).

In December, 1897, the saw mill and planing mill, tramways, machinery, etc., attached thereto, together with fifteen acres of land on which the same were placed, and constituting what is referred to in the evidence as the site of the mills, was adjudicated to the plaintiff, Breard, and the defendant, Blanks, together with a lot of lumper or logs in indivision, for the sum of five thousand five hundred and twenty-five dollars.

At the time of these sales the Sheets Lumber Company was indebted to the Ouachita National Bank, of which plaintiff was the president, in the sum of three thousand nine hundred and three dollars and twenty-five cents, ($3,903 25-100) and interest, and to the Farmers and Merchants' Bank, of which the defendant was the president, in the sum of twelve thousand one hundred and sixty-two dollars and twenty-four cents ($12,162 24-100) and interest.

Shortly after these purchases were made the saw and planing mills were placed in active operations and business, under the name of the Pargoud Lumber Company; in charge of Woodworth and Chauvins as managers, they getting one-third of the net revenues.

This business continued for about five months, up to the time that the properties above mentioned, together with others, were sold to the Eau Claire St. Louis Lumber Company; as will be hereafter mentioned.

During these operations the logs which had been bought by Breard and Blanks at the sheriff's sale were sawed up and sold as a separate and distinct lot of lumber, and other logs were bought, sawed and sold by the partnership.

The mill business during the five months was profitable. It seems that adjacent to the properties in question there was a tract of 147 acres of land which stood in the name of Blanks, and John P. Parker, and a large tract standing in the name of Blanks. A corporation known as the Eau Claire St. Louis Lumber Company was willing in case it could buy all these various properties, to become the purchaser of the same.

In aid of that purpose Breard transferred to Blanks an undivided

half interest in the property, he had acquired in indivision with him at a nominal sum, taking a counter letter.

Blanks and Parker then sold the 147 acres of land which they owned to the Eau Claire St. Louis Lumber Co., for —————————, and Blanks sold the balance of the other properties to the same corporation for a lump price of one hundred thousand dollars. After this sale was made the present suit was instituted by the plaintiff for an adjustment and settlement of the accounts between himself and Blanks, arising out of these various transactions.

The plaintiff claims that when he and the defendant bought the mill and mill tract, together jointly, it was under an agreement with the defendant that the property which the latter had himself previously purchased should be placed also in joint ownership with him so that these properties should belong to defendant and himself as owners, each for an undivided half; that he had often called on defendant to make a deed to him of an undivided half of the property which he had separately bought, but he neglected to do so, and had finally sold it in his own name as stated, as part of those sold to the Eau Claire Company.

He charged that although the deed of sale to the latter company was declared to be for the lump price of one hundred thousand dollars, the particular portions of the property sold which Blanks himself had bought and that which he and Blanks had bought together at sheriff's sale, were really sold for twenty-five thousand dollars, but that the defendant asserted that it had sold only for twenty thousand dollars.

That the price at which the one hundred and forty-seven acres of land sold by Parker and Blanks was declared to have been sold to the Eau Claire Lumber Co., was a false recital, to the extent of five thousand dollars; that the amount was really a portion of the price of the properties, adjudicated to himself and to Blanks and himself at sheriff's sale, and was made to figure in the sale of the 147 acres to conceal the fact of its origin.

Plaintiff claims that the properties so averred by him to have been owned in indivision between himself and Blanks, having been sold at a large advance over cost to the Eau Claire Company, he is entitled to share the same equally with the defendant. That he is entitled to one-half of the proceeds of the sale of the lumber purchased jointly between him and defendant at sheriff's sale, and one-half of the operation of the mill. He avers that the whole fund is in the hands of the

defendant and that his own share therein amounts to at least ten thousand dollars.

He cited defendant into court and prayed judgment against him for that amount or for so much as should be found due to him on the trial of the cause.

Plaintiff did not call on defendant for an account, but left the rights and obligations of parties to be examined into and determined by evidence received directly at the trial.

This method of proceeding has greatly embarrassed us, as the judgment of the District Court is based upon data furnished by accounts referred to by witnesses on the stand, in connection with their testimony, but which were not filed in the record as they should have been, (Webre vs. Beltram, 47 Ann., 204), and we are entirely in the dark as to what the accounts, as a whole, show. Plaintiff's counsel contend in their brief, as we understand them, that the court erred in charging up certain items to the wrong account or having charged them up on two different accounts. How this may be we do not know. Accounts "G" and "H," referred to in the note of evidence, and the court's opinion, are not in the record, and we do not feel that we can deal safely and finally with these accounts with the record in its present condition.

We will be forced to remand this cause, but there are certain matters which we can dispose of at once, and we will endeavor to some extent to shape future proceedings below by suggesting some matters as they presently appear to us.

On the trial below defendant and plaintiff both were placed upon the stand as witnesses in regard to the agreement which plaintiff sets up in his petition as having been made between them. Plaintiff, as a witness, affirms positively that the agreement was made on the terms asserted, while defendant denies with equal positiveness that the terms of the agreement were such as plaintiff avers.

The terms of the agreement, according to him, were of an entirely different character. Plaintiff repudiated them as so unreasonable as not to be entertained for a moment. Defendant says that he did agree to plaintiff and himself becoming joint owners of the properties adjudicated to them, but not as interested equally in the same. On the contrary, they were to become owners in all the properties in the proportion of the debts due by the Sheets Lumber Co. to the Farmers and Merchants' Bank and the Ouachita National Bank, that to the

Ouachita National Bank being $3093, and that to the Merchants' and Farmers' Bank being $12,163.

No one but the parties themselves pretend to know anything of this agreement, and their versions in regard to it are diametrically opposed to each other. The District Judge, referring to these parties, said: "They are both gentlemen of the highest social and moral standing in the community, and viewing their testimony from every conceivable standpoint, it is so evenly balanced that I cannot say that one is entitled to more weight than the other, and in my estimation the one completely offsets and neutralizes the other. I must, therefore, disregard both their testimony and leave it entirely out of the consideration of the case, wherever it conflicts.

"I am also deprived of the benefit of that rule of practice which throws the burden of proof upon the plaintiff, and requires that he should make out his case. Since this is a suit for a settlement of a partnership, and both parties ask that it be liquidated, the case must then be decided without reference to the testimony of either Breard or Blanks, and leaving out of consideration this testimony of the only two witnesses who knew what the terms of the partnership were, we have only the deeds and the presumption and the legal effect flowing from the deeds. The sheriff's deed to Breard and Blanks is made to them individually, no allusion is made to the banks, and as there is no stipulation to the contrary the property is conveyed to those purchasers in equal portions. The deed from the sheriff recites that when the mills and fifteen acres of land were offered, 'R. B. Blanks and D. A. Breard, Jr., became the purchasers in indivision of all the property,' and that the same was 'adjudicated to them.' This deed is signed by the sheriff and by R. B. Blanks and D. A. Breard, Jr. The subsequent deed from D. A. Breard, Jr., to Blanks states that Breard sells to Blanks an undivided half interest in and to this same property, and is signed by Blanks, as well as by Breard, and seems to be an admission that an undivided one-half interest was then and previous to that time, held adversely to Blanks, and again in the deed from Blanks to the Eau Claire St. Louis Lumber Co., this fifteen acres of land with the mills, etc., is described as 'being the same property acquired by this vendor (R. B. Blanks) and D. A. Breard, Jr., in indivision, at the aforesaid sheriff's sale,' and the interest of said D. A. Breard, Jr., therein subsequently acquired by this vendor by purchase, on May 18, 1898, and this deed is signed by Mr. Blanks.

"Now the deeds of themselves considered alone and independently of any other outside testimony, can only be construed one way, that the mill property was purchased by R. B. Blanks and D. A. Breard, Jr., in equal portions. The joint purchase of this property did not constitute a partnership. (C. C., 2806), 4 Ann., 216.

"When Blanks and Breard operated the mills there was a partnership for this venture, but there being no stipulation to the contrary, each of the partners would be entitled to an equal share of the profits. Art. 2865, C. C., says: 'When the contract of partnership does not determine the share of each partner in the profits or losses, each one shall be entitled to an equal share of the profits and must contribute equally to the losses.'

"These remarks and this process of reasoning and this evidence, however, does not apply to the property previously acquired by Blanks; the residence and the five acres upon which it was situated, and the fifty-eight acres of land for which he paid $4475. If upon this branch of the case the testimony of Blanks and Breard neutralize each other as to the terms upon which the property was to have been taken into the partnership, or added to that which was purchased in the name of Breard and Blanks, we have no deeds, records or other evidence except Blank's admission in his answer, that can throw any light upon the question, and his admission must, of course, be taken with the qualification set forth in the answer, and if under the answer it is added to the other property, it must be added to the other restriction or statement that after paying back the purchase price the proceeds were to be divided in the proportion to the debts of the two banks, that of the Merchants' and Farmers' Bank being $12,163.61-100 and interest, and that of the Ouachita National Bank $3903.24-100. This theory is also borne out by the legal maxim that 'no one is presumed to give' and the testimony does not show that any consideration was paid for this transfer. Breard was asked several times whether there was any other consideration or inducement for this transfer except his payment of part of the price; he stated there was not. He did not pay any portion of the price. All consideration of this branch of the case could have been easily eliminated by a simple denial in the answer and objection to parole evidence. This was not done, however, and while I feel authorized to pass upon the facts, I do not feel justified in going further upon this branch of the case than equity and good conscience demand. I think therefore

that while Breard is entitled to one-half of the proceeds and profits of that portion of the property which was sold by the sheriff to Breard and Blanks, being the saw mill and planing mill with accessories and lumber, with the fifteen acres of land upon which their plants were constructed, after reimbursing the debts for purchase price and other expenses of this portion of the property, he is only entitled to a *pro rata* distribution in the excess realized by the residence with its five acres and the other fifty-eight acres of land after paying back the purchase price of these lots. The excess to be distributed between Breard and Blanks in proportion to the debts due to the two banks, that of the Merchants' and Farmers' Bank being $12,162.61, and that to the Ouachita National Bank $3093.24. The amount ascertained to be due these two funds can only be ascertained by *pro rating* the amount for which the whole property sold ($20,000) between the two properties in proportion to the cash price of each.

"This will give to the mill property owned jointly by Blanks and Breard, out of the $20,000 for which the whole sold, $13,006.38, and to the residence and fifty-eight acres, $6993.62.

"That is, the sum of the cost of the two properties, to which is added the improvements added to the mills, is to the cost of each parcel of the property as the amount realized from the whole is to the fund coming to that lot or parcel, adding, of course, to the purchase price of the mill property the cost of improvements. From the $13,006.38 is to be deducted $6,893.33, which leaves $6,116.05 to be divided between Blanks and Breard, giving each $3038, and to this to be added one-half of the amount of the profits of the saw and planing mill which on the 29th of July, 1898, according to statement "G" (not in the record) $3308.75 (and $1187.72 on an uncollected account) but which the books of the M. & F. Bank show amount at this time, in consequence, I suppose, of the accounts outstanding having been collected, to $4814.26, including $803.96 due Breard and Blanks (amount of the net proceeds of the sale of the logs purchased jointly by Breard and Blanks at sheriff's sale and sawed and sold separately from the other lumber sawed at the mill and sold), which was deducted on statement "G" and also some amounts due Woodworth and Chauvin.

"Taking from this $4814.26, the amount due Breard and Blanks, $803.98, leaves $4010.28, an excess of $701.53 over account which shows collections of that amount—Woodworth and Chauvin (superintendents or managers of the mills who under their contract were

entitled to receive one-third of the net profits of the mill by way of compensation for their services) are entitled to one-third of this $701.53, or $233.84, which taken from the $4010.28—$233.84, leaves $3776.44. There is still due a fee of $250, which leaves $3526.44 to be divided—$3526.44 less $1763.22 leaves seventeen hundred and sixty-three dollars and twenty-two cents for Breard in the proceeds of the mill revenues besides being half owner of the claims still uncollected, if any, making Breard's and Blank's share in the funds from this branch of the case each $3038.68, plus $1763.22, equal to $4801.90.

"Now from the other branch of the case the proceeds arising from the fifty-eight acres of land and the five acre residence lot, to-wit: $6993.62, we have to deduct $4475, the cost of the lots, and it leaves $2518.62 to be divided between Blanks and Breard in proportion to the claims of their respective banks against the Sheets Lumber Co., Limited, $12,162.61, and $3903.24, from which I calculate that Blanks should receive $1900.66 and Breard $609.80, which would make the total shares of each party...........................$4801 90
Breard ...............................................   609 80
                                                      ─────────
                                                      $5411 70
One-half B. and B. debt ...............................   401 99
                                                      ─────────
                                                      $5813 69

And Blanks .........................................$4801 90
                                                      $1966 66
                                                      ─────────
                                                      $6702 56
                                                        401 99
                                                      ─────────
Blanks .............................................$7104 55

after paying Woodworth and Chauvin their one-third of the amount already collected and after paying $250 still due on Leonard's fee.

"The uncollected accounts to belong in equal proportions to Breard and Blanks subject to the claim of Woodworth and Chauvin for one-third of the amounts—costs of court to be equally divided."

It will be seen from this that while the District Court in the division of the profits arising from the sale of the property purchased jointly by Breard and Blanks and the business of the mills restricted

Breard to one-half and did not permit the division to made upon the basis of the debts due to the two banks of which these two parties were presidents, that is to say, held him to a division on the face of the deed, it permitted Breard to divide with Blanks the profits arising from the sale of the residence property and the fifty-eight acres of land, on the basis of the debts due to the two banks, that is to say, it permitted him to share in the proceeds of the sale of pieces of property (real estate) in which on the face of the deeds he had no interest whatever.

This result was reached by holding Blanks to a supposed absolute admission that he had agreed to permit Breard to have one-half interest in the property; and that the only question upon which the parties divided was as to the share which Breard was to take in the proceeds of that property; Breard claiming that he would be entitled to take one-half and Blanks denying this but admitting that he was entitled to take a proportion of the profits based upon the amounts due to the two banks. Upon this supposed restricted issue the court ruled adversely to Breard's claim of one-half, but held Blanks (on the theory that an admission had been made by him to the effect that this had been agreed to by himself) permitting Breard to share with him in the profits of the property adjudicated to himself individually on the basis of the claims due to the two banks.

The plaintiffs in their brief argue that defendant's position is that Breard should pay one-half the price of both sets of property and that the division of the profits of both properties should be on the basis of the amounts due to the banks.

They say that it is a very unreasonable, almost absurd proposition, to advance that a party would be willing to consent to pay one-half of the price of property and to share in the proceeds of that same property when sold on the basis of the joint owners getting four dollars to one.

We do not understand defendant's position to be that which the plaintiff advances as being his position, nor do we understand the averments made in defendant's answer to be of the character which the court attributed to them and as containing admissions which narrowed the issue between the plaintiff and the defendant under defendant's pleadings to the sole question as to whether Breard should take one-half of the profits of the residence tract and other tract pur-

96

chased by Blanks or take in an amount proportioned to the amount
due to the banks.

We do not think that defendant ever pretended that plaintiff should
pay one-half of the price of both properties and divide profits on an-
other basis, but to say that it had been agreed between plaintiff and
himself that they should be bound between themselves for the price
of all the properties in the proportion of the amounts due to the banks
and should share in the profits on the same basis.

He maintains that the court should not have divided his pleadings
or any admissions contained therein and disconnect his recognition
of his having been willing to allow plaintiff to come into joint owner-
ship with him in the property which had been adjudicated to himself
separately, from the condition affixed under which he stated that he
was willing that should be done, which was that their ownership in
these properties and their liability for the price thereof should be on
the same basis as was to be the division or share of profits.   We think
that was fairly the import of defendant's pleadings.

We do not think that his inability to prove satisfactorily the agree-
ment which he set up should impose upon him a liability to which he
had recognized in his pleadings he would be subjected, but only sub-
jected to as the result of that agreement and on the contingency of its
being carried out.

There is a view of the situation as presented, which we think would
be much more likely to correspond with the actual situation than that
adopted by the lower court, and that is to assume that plaintiff and
defendant must have misunderstood each other in respect to the prop-
osition to which they both allude and that their minds did not meet
thereon.   Each is so positive as to the correctness of his own version
of the matter and those versions are so irreconcilable that we can, in
view of the declared high character of both parties reach no other con-
clusion than this.   Each party claims to have shown by certain facts
disclosed on the trial that his version was correct, but we do not give
to the facts referred to the probative force which each claims for them.

Both have more or less by their acts and declarations furnished a
handle for argument by the other.

We see no clear way out of the very unsatisfactory condition in
which business men controlling large interests have placed this mat-
ter by failing to place their agreement in writing than to leave their
rights rest upon their respective deeds.

There is no evidence in the record that the tract purchased by Blanks separately furnished any portion of the lumber sawed at the mill or that it entered in any manner as a factor into the partnership affairs.

We do not think it was utilized in any way by the partnership, and in our opinion it should be entirely ignored in that connection.

The views we have reached necessitate a reversal of the judgment and a remanding of the case to the lower court for further proceedings.

We adopt the latter course on account of the absence from the record of the statements on which the court acted and our inability to reach any conclusion as to whether the claim of particular minor errors in the judgment urged by appellee be well founded or not, and because the judgment itself left the affairs of the partnership to a certain extent still open. Matters by the time of a new trial will be, we think, in position to be finally closed. Had these asserted errors been urged as they should have been on a motion for a new trial the lower court would have had an opportunity either to have corrected them, if the claim in respect thereto was well founded, or would have assigned reasons in support of its conclusions on these special points if it adhered to them as being correct.

There is nothing in the record to sustain plaintiff's claim that the properties referred to in these pleadings sold for more than twenty thousand dollars; or that any portion of the actual price thereof was concealed by being made to appear as part of the price of the property sold by Parker and Blanks to the Eau Claire Company. That property belonged exclusively to Parker and Blanks. It was not intrinsically of much value, but the high price obtained for it was due to the position it occupied in respect to the other properties. The Eau Claire Company was only willing to buy in the event that they could buy the entire property they desired, and in order to do this, this particular tract of land had to be purchased. The owners had the right to avail themselves of the opportunity for their own benefit but the sale of the entire property operated indirectly to the interest of the plaintiff, as it caused the purchase at a high price of the mill property purchased by plaintiff and Blanks.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court appealed from be and the same is hereby annulled, avoided and reversed, and it is now

ordered, adjudged and decreed that the plaintiff, Daniel A. Breard,. Jr., never acquired ownership or interest in the property purchased by the defendant, Robert B. Blanks, on the second day of October, 1897, in his own name at the receiver's sale made by the sheriff of the parish of Ouachita of the property of the Sheets Lumber Company, Limited, referred to in plaintiff's petition herein, and is not entitled to any share of the proceeds of the sale thereof made by the defendant to the Eau Claire, St. Louis Lumber Company, Limited, and that defendant Robert B. Blanks was the sole owner thereof and entitled to the whole of said proceeds.

It is further ordered, adjudged and decreed that the plaintiff, Daniel A. Breard, Jr., and the defendant, Robert B. Blanks, acquired jointly with equal interests therein on the fourth day of December, 1897, at the receiver's sale of the property of the Sheets Lumber Company, Limited, made on that day by the sheriff of the parish of Ouachita, the property adjudicated at said sale to R. B. Blanks and D. A. Breard, Jr., and referred to in plaintiff's petition and that they were joint owners of the same, holding an equal undivided interest therein at the time of the sale thereof by defendant Robert B. Blanks to the Eau Claire St. Louis Lumber Company on the 19th of May, 1898, and that they are entitled to share in the proceeds of the said sale of said property on the basis of an equal undivided joint interest therein.

It is further adjudged, ordered and decreed and recognized that the plaintiff Daniel A. Breard, Jr., and the defendant Robert B. Blanks were partners; each holding an equal interest in the partnership known as the Pargoud Lumber Company in the parish of Ouachita, entitled as such in the settlement thereof to share equally in the profits of the same with the liability on the part of each of them to contribute equally to the expenses and losses thereof.

It is further ordered, adjudged and decreed that this cause be remanded to the lower court for the purposes of ascertaining and settling the rights of the parties and making a final partition between them.

It is further ordered that appellee pay the costs of this appeal.